**Joel DEJEAN, Appellant,**

v.

**Edward C. WADE, M.D. and Edward C. Wade, M.D., P.A., Appellees.**

**No. 14–99–00925–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

March 8, 2001.

Rehearing Overruled May 10, 2001.

---

Robert J. Binstock, Helen A. Cassidy, Houston, for appellants.

Jennifer House, Houston, for appellees.

Panel consists of Chief Justice MURPHY and Justices AMIDEI and HUDSON.[1]

## OPINION

PAUL C. MURPHY, Justice (Assigned).

Joel Dejean ("Dejean"), appellant appeals from a take nothing judgment rendered by the trial court in a medical malpractice case brought against Dr. Edward C. Wade and Edward C. Wade, M.D., P.A. ("Wade"), appellees. We reverse and remand.

In April of 1995, Dejean sought treatment for his vision from Dr. Dunn, an ophthalmologist with Eye Associates of Houston, who referred him to Wade. On May 4, 1995, Wade examined Dejean's eyes and determined that the right eye was permanently damaged by a massive tear in the retina, and Dejean's left retina was showing signs of thinning, which, if left untreated, could produce the same

---

1. Senior Chief Justice Paul C. Murphy and Former Justice Maurice Amidei sitting by assignment.

condition that was present in the right eye. Wade recommended a laser procedure to be performed on Dejean's left eye to prevent the retina from tearing away and detaching. Dejean scheduled an appointment for the laser surgery in Wade's office on May 19, 1995.

On May 19, 1995, Dejean arrived at Wade's office, and before the surgery, Dejean signed a consent form for laser treatment for lattice degeneration of the left eye. The consent form warned of, 1) transient blurred vision; 2) transient ocular irritation and inflammation; 3) hemorrhage; 4) complications requiring further treatment; and 5) retinal detachment requiring further surgery. This consent form used by Wade, however, failed to track the requirements as provided by statute. Specifically, laser surgery to the retina is a List A procedure and requires the doctor to warn of partial or total loss of vision. 25 TEX. ADMIN. CODE § 601.2 (2000). No warning of partial or total loss of vision appears anywhere on Wade's consent form.

In attempting the laser surgery, Wade encountered difficulty, and made the decision to switch to another procedure, a cryopexy. A cryopexy, because it is still retinal surgery, requires the same disclosures as was required for the laser surgery, namely a warning of partial or total loss of vision. In order to perform the cryopexy, a different form of anesthesia is required than was used for the laser surgery. Appellee decided to use a retrobulbar injection for regional anesthesia. In a retrobulbar injection, a needle is inserted in the eye socket, under the eyeball.

During the retrobulbar injection on Dejean, Wade punctured Dejean's eye while angling the needle down and again while angling the needle up. The puncture of Dejean's eye resulted in scar tissue, and the shrinking of the scar tissue led to retinal detachment that caused Dejean's blindness in his left eye.

At trial, Dejean's proposed jury question regarding informed consent was submitted to the trial court, and refused. Moreover, after all the evidence was presented, but before jury deliberation, the trial court granted a partial directed verdict in favor of appellee on the issue of informed consent, and submitted only negligent treatment to the jury. The jury did not find appellee negligent, and the trial court entered a final judgment on May 21, 1999.

In his sole point of error, Dejean contends that the trial court erred in granting Wade's motion for a directed verdict on the issue of informed consent. Specifically, Dejean argues that before Wade could perform any surgery upon Dejean's left eye, Wade needed to get Dejean's informed consent. Moreover, the *Texas Register* publishes lists of warnings that Article 4590i of the Medical Liability and Insurance Improvement Act require physicians to provide to their patient when performing List A procedures, which Wade failed to do in this case. Therefore, under article 4590i Dejean contends that a rebuttable presumption was created that Wade was negligent, and the issue of informed consent should have been presented to the jury. We agree.

A directed verdict is proper when:

> (1) a defect in the opponent's pleadings makes them insufficient to support a judgment; (2) the evidence conclusively proves a fact that establishes a party's right to judgment as a matter of law; or (3) the evidence offered on a cause of action is insufficient to raise an issue of fact.

TEX.R.CIV. P. 301; *Knoll v. Neblett,* 966 S.W.2d 622, 627 (Tex.App.—Houston [14th Dist.] 1998, pet. denied). We consider all

of the evidence in a light most favorable to the moving party, disregarding all contrary evidence and inferences. *Knoll,* 966 S.W.2d at 627. If there is any conflicting evidence, an instructed verdict is improper and the issue must go to the jury. *White v. Southwestern Bell Tel. Co.,* 651 S.W.2d 260, 262 (Tex.1983).

The issue of whether a doctor failed to fully inform a patient of the risks of surgery is governed by the Medical Liability and Insurance Improvement Act ("the Act"). TEX.REV.CIV.STAT.ANN. art. 4590i, § 6.02 (Vernon Supp.2000); *Ocomen v. Rubio,* 24 S.W.3d 461, 468 (Tex.App.—Houston [1st Dist.] 2000, no pet.); *Knoll,* 966 S.W.2d at 627. The Act created the Texas Medical Disclosure panel which evaluates all medical and surgical procedures, determines if disclosure of risks is required, and if so, determines how much disclosure is required. TEX.REV.CIV.STAT. ANN. art. 4590i, § 6.04(a); *Earle v. Ratliff,* 998 S.W.2d 882, 891 (Tex.1999); *Ocomen,* 24 S.W.3d at 468; *Knoll,* 966 S.W.2d at 627. If the procedure requires some disclosure of the risks involved in the treatment, it is placed on List A. TEX.REV.CIV. STAT.ANN. art. 4590i, § 6.04; *Earle,* 998 S.W.2d at 891; *Ocomen,* 24 S.W.3d at 468; *Knoll,* 966 S.W.2d at 627–28. However, if the Texas Medical Disclosure panel determines that no disclosure is required, the procedure is placed on List B. TEX.REV.CIV. STAT.ANN. art. 4590i, § 6.04; *Earle,* 998 S.W.2d at 891; *Ocomen,* 24 S.W.3d at 468; *Knoll,* 966 S.W.2d at 627–28. Advising a patient of risks in compliance with the statute's required disclosure creates a rebuttable presumption that the physician was not negligent. TEX.REV.CIV.STAT.ANN. art. 4590i, § 6.07(a)(1); *Knoll,* 966 S.W.2d at 628. On the other hand, failure to disclose when required, creates a rebuttable presumption that the doctor was negligent. TEX.REV.CIV.STAT.ANN. art. 4590i, § 6.07(a)(2); *Knoll,* 966 S.W.2d at 628.

All parties agree that retinal surgery is a List A procedure requiring certain disclosures. Specifically, according to the Texas Medical Disclosure Panel, Wade was required to disclose the risk of partial or total loss of vison. *See* TEX.REV.CIV. STAT.ANN. art. 4590i, § 6.05. This warning of partial or total loss of vision must have been given before any retinal surgery could begin. *See id; Brown v. Armstrong,* 713 S.W.2d 725, 727 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) (recognizing that the doctrine of informed consent applies only to medical procedures which have yet to be performed). The record reveals that appellee failed to warn appellant of the risk of partial or total loss of vision. Wade, however, contends that the procedure that injured Dejean was a List B procedure, and no warnings were necessary.

We recognize that a retrobulbar injection is a regional anesthesia and as such, is a List B procedure requiring no warnings. We can not, however, ignore the plain and clear language of article 4590i.

Section 6.05 of the Act requires that "[ b]efore a patient . . . gives consent to any medical care or surgical procedure that appears on the panel's list requiring disclosure, the physician or health care provider shall disclose to the patient . . . the risks and hazards involved in that kind of care or procedure." TEX. REV .CIV.STAT.ANN. art. 4590i, § 6.05. Thus, before Wade could have performed retinal surgery on Dejean's left eye, Wade needed Dejean's consent. Moreover, failure to disclose such risks and hazards "shall create a rebuttable presumption of a negligent failure to conform to the duty of disclosure set forth in Section 6.05 and 6.06 of this subchapter, and this presumption shall be included in the charge to the

jury." *Id.* at § 6.07(a)(2). While not directly on point, we find the public policy announced in *Earle v. Ratliff* very compelling in the present case.

In *Earle,* it was undisputed that the surgeries performed on appellee were both List A procedures, and appellant warned appellee of all the risks identified by the Texas Medical Disclosure Panel regarding those procedures. 998 S.W.2d at 891. The court held that the Act does not permit a finding that a physician who made disclosures as prescribed by the Texas Medical Disclosure Panel was negligent for not disclosing other risks associated with the recommended procedure. *Id.* In so holding, the court reasoned that to allow such a finding would afford a physician no protection from liability for nondisclosure and the entire purpose of the Texas Medical Disclosure Panel would be thwarted. *Id.* We find the same reasoning applicable in our case.

The Texas Medical Disclosure Panel provides physicians with the risks that should be disclosed before performing retinal surgery. *See* 25 Tex Admin.Code § 601.2 (2000). To allow a physician not to warn of risks identified by the Texas Medical Disclosure Panel and mandated by article 4590i section 6.05, undermines the purpose of the Texas Medical Disclosure Panel.

Wade does not dispute that retinal surgery is a List A procedure that requires the disclosure of the risk of partial or total loss of vision. Moreover, Wade does not dispute that he failed to warn Dejean of the risk of "partial or total loss of vision." The trial court, therefore, erred in granting Wade's motion for directed verdict.

Accordingly, we reverse the judgment in favor of Wade and remand Dejean's cause of action against Wade for a trial on the merits.