Opinion issued March 11, 2004










     




In The
Court of Appeals
For The
First District of Texas




NO. 01-02-01139-CV




SHARON CLARK, INDIVIDUALLY AND AS THE EXECUTRIX OF THE
ESTATE OF CHARLES CLARK, DECEASED, Appellant

V.

MEMORIAL HERMANN HOSPITAL SYSTEM a/k/a MEMORIAL
HOSPITAL SOUTHWEST; TEXAS ONCOLOGY P.A.; MEMORIAL
CARDIOVASCULAR SURGERY ASSOCIATES, P.A. a/k/a
CARDIOVASCULAR SURGERY OF HOUSTON, INC.; CHARLES L.
CONLON, M.D.; SANFORD J. LUBETKIN, M.D.; SANFORD J. LUBETKIN,
M.D., P.A.; RICHARD M. ALEXANDER, JR.; MARK LAMBERT, M.D., and
MARK LAMBERT, M.D., P.A., Appellees




On Appeal from the 152nd District Court
Harris County, Texas
Trial Court Cause No. 99-64226




MEMORANDUM OPINION

          Sharon Clark, appellant, individually, and as the executrix of the Estate of
Charles Clark, challenges the trial court’s rendition of summary judgment in favor of
appellees, Memorial Hermann Hospital System a/k/a Memorial Hospital Southwest,
Texas Oncology P.A., Memorial Cardiovascular Surgery Associates, P.A. a/k/a
Cardiovascular Surgery of Houston, Inc., Charles L. Conlon, M.D., Sanford J.
Lubetkin, M.D., Sanford J. Lubetkin, M.D., P.A., Richard M. Alexander, Jr., Mark
Lambert, M.D., and Mark Lambert, M.D. P.A., in her wrongful death action, alleging
medical negligence in the treatment of Charles Clark. In two points of error,
appellant contends that the trial court erred in excluding the testimony of her expert
witnesses, Drs. Bass and Durand, which resulted in the trial court’s granting of 
appellees’ no-evidence summary judgment motions.
          We affirm.
Background
          In January 1996, Charles Clark was diagnosed with severe congestive heart
failure and underwent mitral valve replacement surgery.


 Over the next two years,
Clark experienced complications attributed to the mitral valve replacement. In May
1998, Dr. Richard Alexander performed emergency surgery and found a valvular leak
in two places where sutures from the first surgery had never healed. Clark failed to
recover from the May surgery and died on May 14, 1998. 
          On December 30, 1999, appellant filed suit against nine of Clark’s healthcare
providers, claiming medical negligence and alleging that appellees violated the
standard of care in failing to: 1) use a ventricular heart-assist device, 2) timely
perform surgery to repair the perivalvular leak, and 3) use pharmacological agents to
lower Clark’s pulmonary hypertension. Pursuant to the Medical Liability Act,



appellant designated a thoracic surgeon, James Bass, Jr., M.D. and a cardiologist,
Jean-Bernard Durand, M.D. as her experts to testify on the issues of liability and
causation. Thereafter, appellees filed multiple challenges to appellant’s experts.


 
Concurrently, appellees moved for both traditional and no-evidence summary
judgment The trial court sustained appellees’ challenges to Drs. Bass and Durand,
and, subsequently, granted all appellees’ motions for summary judgment.
Discussion
Standard of Review
          A trial court has broad discretion to determine the qualification of a witness as
an expert, and we will reverse only if there is an abuse of that discretion. E.I. du Pont
de Nemours & Co. v. Robinson, 923 S.W.2d 549, 558 (Tex. 1995). A reviewing court
cannot conclude that a trial court abused its discretion if, in the same circumstances,
it would have ruled differently or if the trial court committed a mere error in
judgment. Robinson, 923 S.W.2d at 558. The test is not whether the facts present an
appropriate case for the trial court’s action in the opinion of the reviewing court. Id. 
We will gauge an abuse of discretion by whether the trial court acted without
reference to any guiding rules or principles. Id. Thus, a trial court enjoys wide
latitude in determining whether expert testimony is admissible. Coastal Tankships,
U.S.A. v. Anderson, 87 S.W.3d 591, 597 (Tex. App.—Houston [1st Dist.] 2002, pet. 
denied) (citing Hernandez v. State, 53 S.W.3d 742, 750 (Tex. App.—Houston [1st
Dist.] 2001, no pet.), Harvey Brown, Procedural Issues Under Daubert, 36 Hous. L.
Rev. 1133, 1159 (1999)). 
Admissibility of Expert Testimony
          In a medical malpractice cause of action, a plaintiff must prove by competent
testimony that the defendant’s negligence proximately caused the plaintiff’s injury. 
Duff v. Yelin, 751 S.W.2d 175, 176 (Tex. 1988). A plaintiff must establish: (1) a duty
requiring the physician to conform to a certain standard of care; (2) the applicable
standard of care and its breach; (3) an injury; and (4) a reasonably close causal
connection between the breach of the standard of care and the injury. Blan v. Ali, 7
S.W.3d 741, 744 (Tex. App.—Houston [14th Dist.] 1999, no pet.); Wheeler v.
Aldama-Luebbert, 707 S.W.2d 213, 217 (Tex. App.—Houston [1st Dist.] 1986, no
writ). In a medical malpractice case, breach of the standard of care and proximate
cause must be established through expert testimony. Ocomen v. Rubio, 24 S.W.3d
461, 466 (Tex. App.—Houston [1st Dist.] 2000, no pet.); see also Blan, 7 S.W.3d at
744 (expert testimony is necessary in a medical malpractice case to meet plaintiff’s
burden as well as to establish or preclude summary judgment). 
          In determining the qualifications of experts in a medical malpractice case, we
look to the Texas Rule of Evidence 702, the Medical Liability Act, and interpretive
case law. Blan, 7 S.W.3d at 744. Rule 702 permits a witness who is qualified as an
expert by knowledge, skill, experience, training, or education to testify on scientific,
technical, or other specialized subjects if the testimony would assist the trier of fact
in understanding the evidence or determining a fact issue. Tex. R. Evid. 702; Keo v.
Vu, 76 S.W.3d 725, 731 (Tex. App.—Houston [1st Dist.] 2002, no pet.). The
proponent of the expert testimony bears the burden of showing that the expert is
qualified and that his testimony is relevant to the issues, based on a reliable
foundation, and will assist the trier of fact.


 Robinson, 923 S.W.2d at 556. 
          Likewise, the offering party must demonstrate that the witness possesses
special knowledge as to the very matter on which the witness proposes to give an
opinion. Keo, 76 S.W.3d at 731. Former Section 14.01(a-c) of the Medical Liability
Act provided: 
(a) In a suit involving a health care liability claim against a physician for
injury to or death of a patient, a person may qualify as an expert witness
on the issue of whether the physician departed from accepted standards
of medical care only if the person is a physician who:
(1) is practicing medicine at the time such testimony is
given or was practicing medicine at the time the claim
arose;
(2) has knowledge of accepted standards of medical care
for the diagnosis, care, or treatment of the illness, injury, or
condition involved in the claim; and
(3) is qualified on the basis of training or experience to
offer an expert opinion regarding those accepted standards
of medical care.
(b) For the purpose of this section, “practicing medicine” or “medical
practice” includes, but is not limited to, training residents or students at
an accredited school of medicine or osteopathy or serving as a
consulting physician to other physicians who provide direct patient care,
upon the request of such other physicians.
(c) In determining whether a witness is qualified on the basis of training
or experience, the court shall consider whether, at the time the claim
arose or at the time the testimony is given, the witness:
(1) is board certified or has other substantial training or
experience in an area of medical practice relevant to the
claim; and
(2) is actively practicing medicine in rendering medical
care services relevant to the claim.

Act of August 29, 1977, 65th Leg., R.S. ch. 817, 1977 Tex. Gen. Laws 2039 (repealed
2003). 

The Trial Court’s Analysis

          As to whether Drs. Bass and Durand were qualified as expert witnesses, the
trial court considered the Robinson challenges and motions to exclude testimony of
appellant’s two expert witnesses, objections to appellant’s Robinson/Daubert
evidence, 4590i objections to appellant’s expert witnesses, and any responses, replies,
and supplements filed by the parties. Additionally, the trial court conducted a hearing
on appellees’ motion to exclude the testimony of Drs. Bass and Durand. In that
proceeding, the trial court separately analyzed the knowledge, skill, experience,
training, and education of Drs. Bass and Durand with respect to 1) the use of
ventricular heart-assist devices, 2) the timeliness of mitral valve repair surgery, and
3) the use of pharmocological methodology to lower pulmonary hypertension. See
Tex. R. Evid. 702. 
          Similarly, the trial court applied the criteria specified in article 4590i, section
14.01, to assess the qualifications of Drs. Bass and Durand to testify regarding the
standards of care and proximate cause with respect to those same issues. See Act of
August 29, 1977, 65th Leg., R.S. ch. 817, 1977 Tex. Gen. Laws 2039 (repealed
2003). It is evident from the record that the trial court acted with reference to the
appropriate guiding rules and principles of Texas Rule of Evidence 702, the Medical
Liability Act, and interpretive case law in determining the qualifications of
appellant’s experts. Blan, 7 S.W.3d at 744. 
1.       Failure to Use Ventricular Device
          The trial court found that appellant failed to demonstrate that either Dr. Bass
or Dr. Durand was qualified to testify with respect to the standard of care and
proximate cause relating to decisions made during the performance of the surgery at
issue. 
          The record reflects that, in 1991, Dr. Bass relinquished his privileges to
perform cardiac surgery at any institution, because he felt that his cardiac surgical
experience was insufficient for him to continue doing surgery. Thus, 1991 was the
last year that Dr. Bass had privileges to perform any type of cardiac surgery,
including a mitral valve repair or replacement surgery. Dr. Bass testified that he was
not performing mitral valve repair in 1997 or at the time he testified. In fact, Dr. Bass
had never performed a “re-do” mitral valve replacement or repair surgery—the
surgery at issue in the underlying cause. 
          Further, the evidence established that Dr. Durand was not a surgeon. Dr.
Durand even testified that he would not be qualified to offer opinions about
cardiovascular surgery. Appropriately then, Dr. Durand testified that he would not
opine about the standard of care for a cardiovascular surgeon, nor offer any criticism
regarding the surgery in question. 
          Based on all of the evidence, the trial court granted appellees Robinson
challenges “as to any and all testimony or opinions of Drs. Bass and Durand as to
decisions made on the day of surgery during the surgery, and/or intraoperative
decisions, and/or pertaining to the performance of surgery at the time of surgery, and
in particular any opinions on the use of assist devices or bypass.” Furthermore, the
trial court struck, in their entirety, all of the testimony of Drs. Bass and Durand as to
“decisions made on the day of surgery during the surgery, and/or intraoperative
decisions, and/or pertaining to the performance of surgery at the time of surgery, and
in particular any opinions on the use of assist devices or bypass.” On this record, we
hold that the trial court did not abuse its discretion in excluding the testimony of Dr.
Bass and Dr. Durand with respect to the standard of care and proximate cause relating
to decisions made during the performance of the surgery at issue.
2.       Pharmacological Challenge
          The trial court found that appellant failed to demonstrate that either Dr. Bass
or Dr. Durand was qualified to testify with respect to standards of care and proximate
cause with respect to lowering Clark’s pulmonary hypertension, in particular by
pharmacologic attempts. The trial court further found that appellant failed to
demonstrate that either Dr. Bass or Dr. Durand had any reliable scientific
methodology or foundation for opinions relating to lowering Clark’s pulmonary
hypertension by pharmacologic attempts. 
          The record reflects that appellant produced no evidence that Dr. Bass ever
treated a patient using the pharmacological methodology at issue. Nor did appellant
offer any evidence that Dr. Bass either taught the pharmacological methodology or
had personal knowledge of it through experience with other physicians. Instead,
appellant conceded that Dr. Bass’s proximate cause opinion on pharmaclogical
therapy was not based on experience or supported by literature. Appellant also
admitted that Dr. Bass’s testimony was cumulative of Dr. Durand’s with respect to
this issue.


 See Tex. R. Evid. 403. Moreover, Dr. Durand testified that he could not
state, within a reasonable degree of medical probability, that the use of hypertension
medication would have changed the outcome in Clark’s case. 
          With respect to Dr. Durand, the trial court determined that, without more, his
status as a cardiologist did not qualify him as an expert regarding the pharmacological
methodology at issue. See Broders v. Heise, 924 S.W.2d 148, 153 (Tex.1996) (rule
702 inquiry does not end with M.D. degree alone). But during the hearing, appellant
did not offer any evidence that Dr. Durand had any specialized knowledge, skill,
experience, training, or education regarding the use of pharmacological agents to
lower pulmonary hypertension. The trial court excluded the testimony, but offered
to reconsider the issue should appellant put forward specific evidence of Dr. Durand’s
qualification on this issue. 
          Subsequently, appellant filed an affidavit by Dr. Durand, in which he reported
that “[i]n my practice we have done this over 50 times.” However, Dr. Durand’s
affidavit did not indicate that he had any personal experience treating patients with
this methodology, nor did it indicate that he had ever used the methodology on
patients similar to Clark.
          Based on all of the evidence, the trial court granted appellees’ Robinson
challenges as to all testimony or opinions of Drs. Bass and Durand with regard to
lowering Clark’s pulmonary hypertension, in particular by pharmacologic attempts. 
Additionally, the trial court struck, in its entirety, all such testimony or opinion. On
this record, we hold that the trial court did not abuse its discretion in excluding the
testimony of Drs. Bass and Durand concerning the standards of care and proximate
cause with respect to lowering Clark’s pulmonary hypertension by pharmacologic
attempts. 
3.       Timeliness of Surgery
          The trial court found that appellant failed to demonstrate that Dr. Bass was
qualified to testify with respect to standards of care and proximate cause relating to
the timeliness of the repair surgery at issue. 
          At the hearing, appellant admitted that Dr. Bass’s only qualifications with
respect to the timeliness issue were “that he had some cardiology background [and] 
ha[d] done cardiac surgery in the past.” Dr. Bass never performed a “re-do” mitral
valve replacement or repair surgery. Nor is there any evidence that Dr. Bass ever
consulted with any other physicians regarding the timeliness of any patient’s “re-do”
mitral valve surgery. Instead, the evidence established that Dr. Bass relinquished his
privileges to perform cardiac surgery in 1991. As a result, Dr. Bass had not
participated in any cardiac surgery since 1991. 
          In undisputed affidavit testimony, appellees’ expert, cardiovascular surgeon Dr.
Michael Sweeny, testified that “[t]here have been advances and changes in techniques
in the past 10 years with respect to cardiovascular surgery . . . includ[ing] improved
techniques in preservation of the heart, minor changes to the types of prothesis [sic],
and improved techniques to expose the mitral valve.” Dr. Sweeny further testified
that he personally performed “re-do mitral valve surgery and that “[d]etermining the
prognosis of a patient for “re-do” mitral valve replacement is uniquely within the
realm of a cardiovascular surgeon.”


 
          During the hearing, appellant admitted that Dr. Durand, appellant’s other
expert, was better qualified than Dr. Bass to testify as to the timing issue.


 Dr.
Durand testified that he served as part of a heart transplant team, including
participation in decision-making as to the timing of heart surgery. Although Dr.
Durand testified that he had referred patients for “re-do” mitral valve surgery, nothing
in the record indicates that he had actual experience in decision-making with respect
to the timing of “re-do” mitral valve surgeries. Dr. Durand testified that he followed
patients after they have had heart surgery, but the record shows that he had never
performed surgery, and had no qualifications to perform surgery. 
          In Dr. Durand’s testimony on causation regarding the timeliness of Clark’s
mitral valve “re-do” surgery, he opined only in terms of “chance,” “possibility,” and
“opportunity.” Dr. Durand explained that without more information, he was unable
to offer his causation opinion on this issue in regard to a reasonable degree of 
medical probability. See Duff, 751 S.W.2d at 175-76 (proof of causal connection
must be established beyond mere possibilities or conjecture). Thus, Dr. Durand
offered no more than “proof of mere possibilities,” insufficient to support the
submission of the timeliness issue to the fact-finder. Id; See also Bradley v. Rogers,
879 S.W.2d 947, 957-58 (Tex. App.—Houston [14th Dist.] 1994, writ denied)
(conjecture and speculation are not probative of proximate cause). 
          In a later affidavit, Dr. Durand opined in terms of probability, based on what
he vaguely described as additional “information concerning the surgery.” However,
Dr. Durand failed to identify the foundational basis, scientific or otherwise, for his
opinions. He did not explain what additional information he needed, nor did
appellant provide the information to the trial court. Although Dr. Durand asserted
that his timeliness opinions were supported by medical literature, he did not explain
the methodology of the literature or how it supported his opinions, nor was the
literature provided to the trial court. See Robinson, 923 S.W.2d at 557 (“Scientific
evidence which is not grounded in the methods and procedures of science is no more
than subjective belief or unsupported speculation.”). 
          Based on all of the evidence, the trial court granted appellees’ Robinson
challenges to all testimony and opinions of Dr. Bass on the standards of care and
proximate cause relating to the timeliness of the repair surgery. Further, the trial
court struck, in its entirety, all testimony and opinions of Dr. Bass regarding the same. 
Additionally, the trial court granted appellees’ Robinson challenges as to the
qualifications of Dr. Durand to testify on proximate cause relating to the timeliness
of the repair surgery, and as to the foundational reliability of Dr. Durand’s testimony
or opinions relating to the timeliness of the repair surgery. On these facts, we hold
that the trial court did not abuse its discretion in excluding the testimony of Dr. Bass
and Dr. Durand with respect to standards of care and proximate cause with respect to
the timeliness of the repair surgery. 
No Abuse of Discretion
          We have carefully reviewed the record and the trial court’s rulings, not to
decide whether, in the same circumstances, we would have ruled differently, or
whether the trial court committed a mere error in judgment, but to determine whether
the trial court acted without reference to any guiding rules or principles . Robinson,
923 S.W.2d at 558. In this case, the trial court conducted a painstakingly-thorough
analysis of the qualifications of appellant’s experts with respect to each of appellant’s
allegations. To do so, the trial court carefully applied the appropriate tests under rule
702, the Medical Liability Act, and interpretive case law like Robinson. Thus, it is
clear from the face of the record that the trial court conscientiously acted within its
discretion in determining whether the admissibility of appellant’s expert testimony.
Robinson, 923 S.W.2d at 558.
          To summarize, the trial court determined that appellant’s only designated
experts were not qualified to testify with respect to standards of care and proximate
cause regarding any of her negligence allegations. Because expert testimony was 
required to establish breach of the standard of care and proximate cause, appellant
failed to meet her burden of proof on those two essential elements. Tex. R. Civ. P.
166a(i); Ocomen, 24 S.W.3d at 466; Blan, 7 S.W.3d at 744. Therefore, the trial court
did not err in granting all of appellees’ motions for summary judgment. Tex. R. Civ.
P. 166a(i). Accordingly, we overrule appellant’s two points of error. 
Conclusion
          We affirm the judgment of the trial court.
 
 

                                                             Sherry Radack
                                                             Chief Justice
 
Panel consists of Chief Justice Radack and Justices Jennings and Higley.