NO. 12-02-00099-CV



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


TOMMIE J. DENSON,
§
 APPEAL FROM THE THIRD

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


T.D.C.J.-I.D., ET AL,

APPELLEE
§
 ANDERSON COUNTY, TEXAS

 

MEMORANDUM OPINION


 Inmate Tommie J. Denson ("Denson") filed a pro se in forma pauperis civil suit for an injury
to his hand. He filed suit against the Texas Department of Criminal Justice-Institutional Division
(T.D.C.J.-I.D.), and its employees (Tito Orig, Mary Gotcher, Lannette Linthicum, Artis Mosley,
Kenneth Kuykendall, Virginia Buchanan, and Gary Johnson), as well as University of Texas Medical
Branch (U.T.M.B.), and its employees (E. J. Pederson and John Eaton) (sometimes collectively
referred to as "Appellees") pursuant to Tex. Civ. Prac. & Rem. Code Ann. §§ 101.001 et seq.,
commonly known as the Texas Tort Claims Act ("TTCA"). He also filed claims and requested
damages pursuant to 42 U.S.C.A. § 1983 (1994) ("section 1983") for violation of the Eighth
Amendment to the United States Constitution, for retaliation, and for conspiracy. Further, he filed
suit pursuant to the Medical Liability and Insurance Improvement Act ("MLIIA") for medical
malpractice. Additionally, Denson requested injunctive relief, and alleged intentional infliction of
emotional distress, state law conspiracy and retaliation, and violations of the Texas Health and Safety
Code and the Texas Government Code.

 Denson also filed suit against David Smith, Elmo Cavin, Dr. Jason Calhoun and Dr. Ben
Raimer. Drs. Calhoun and Raimer were granted summary judgments and were severed. In eleven
issues, Denson complains that the trial court erred when it denied his motions for summary
judgment, granted summary judgments in favor of all defendants, and granted their motion to
dismiss. We affirm in part and reverse and remand in part.


Background

 Denson fell in the prison shower and broke his hand on September 2, 1999. The next day,
he was sent to the doctor assigned to the Coffield Unit of T.D.C.J.- I.D. Dr. Orig, the treating
physician, x-rayed Denson's hand and concluded that he had suffered a fracture of the head of the
fourth metacarpal of the left hand. Dr. Orig ordered a splint and an ace bandage, and an appointment
was made with a specialist at U.T.M.B. for September 17, 1999. The U.T.M.B. specialist noted a
two-week-old break, and recommended range of motion exercises. Denson's hand healed with noted
deformity and weakness, for which he repeatedly requested surgery. When he was refused the
treatment, he filed suit against the above-named defendants. 

 All defendants, except Smith and Cavin, filed a motion to dismiss under the MLIIA, which
the trial court granted. All defendants, except Smith and Cavin, filed motions for summary
judgment, which the trial court granted. Denson also filed motions for summary judgment, which
the trial court denied. Although not all claims and parties were litigated, the trial court entered a
final order for all defendants. This appeal followed. 


Final or Interlocutory Judgment

 As a general rule, an appeal may be taken only from a final judgment. See Jack B. Anglin
Co. v. Tipps, 842 S.W.2d 266, 272 (Tex. 1992). To be final, a judgment must dispose of all issues
and parties in the case. See State ex rel. Latty v. Owens, 907 S.W.2d 484, 485 (Tex. 1995). No
appeal will lie from a partial summary judgment unless there is an order of severance. Schlipf v.
Exxon, 644 S.W.2d 453, 454 (Tex. 1982). If a judgment is interlocutory rather than final, the appeal
is premature and the case must be dismissed for want of jurisdiction. Simmons v. Williams, 976
S.W.2d 361, 363 (Tex. App.-Houston [14th Dist.] 1998, no pet.). 

 Before addressing the merits of Denson's appeal, we will first determine, sua sponte, 
whether we have jurisdiction to consider this appeal. See Texas Workers' Compensation Comm'n
v. Garcia, 893 S.W.2d 504, 517 n.15 (Tex. 1995). In the case before us, two defendants, Smith and
Cavin, filed an answer with the court, but did not file a motion to dismiss or a motion for summary
judgment, as did the other defendants. However, the trial court signed a final order stating the
following:


 It is ordered that this cause of action be dismissed with prejudice. Any and all relief sought by
Plaintiff Denson against all Defendants at [sic] to all claims in this cause of action is denied and
judgment is rendered in favor of all Defendants. This is a final dismissal of all Plaintiff's claims in
this case [sic] of action. All relief not specifically granted by this order is denied.



It is axiomatic that one may not be granted judgment as a matter of law on a cause of action not
addressed in a summary judgment proceeding. Chessher v. Southwestern Bell Tel. Co., 658 S.W.2d
563, 564 (Tex. 1983). Consequently, the trial court erred when it granted judgment on Denson's
claims against Smith and Cavin. See Schlipf, 644 S.W.2d at 455("We are not to be understood as
authorizing a trial court to grant affirmative relief to a party in the absence of such party's motion
for summary judgment."). However, the supreme court has held that when a trial court grants more
relief than requested and, as a consequence, makes an otherwise partial summary judgment final, that
judgment, although erroneous, is final and appealable. Lehmann v. Har-Con Corp., 39 S.W.3d 191,
202, 206 (Tex. 2001); Page v. Geller, 941 S.W.2d 101, 102 (Tex. 1997). In that situation, a court
of appeals must consider all matters raised on appeal and reverse only those portions of the judgment
that were rendered in error. Id. Accordingly, we reverse the trial court's judgment for Smith and
Cavin, remand those claims to the trial court for further proceedings, and consider the merits of the
remaining claims. 

 

Standard of Review

 In reviewing a 166a(c) motion for summary judgment, this court must apply the standards
established in Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985):


 1. The movant for summary judgment has the burden of showing that there is no
genuine issue of material fact and that it is entitled to judgment as a matter of law.

 2. In deciding whether there is a disputed material fact issue precluding summary
judgment, evidence favorable to the non-movant will be taken as true.

 3. Every reasonable inference must be indulged in favor of the non-movant and any
doubts resolved in its favor.


See Nixon, 690 S.W.2d at 548-49. For a party to prevail on a motion for summary judgment, he
must conclusively establish the absence of any genuine question of material fact and that he is
entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). A movant must either negate at
least one essential element of the non-movant's cause of action, or prove all essential elements of an
affirmative defense. See Randall's Food Mkt., Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995);
see also MMP, Ltd. v. Jones, 710 S.W.2d 59, 60 (Tex. 1986). Since the burden of proof is on the
movant, and all doubts about the existence of a genuine issue of a material fact are resolved against
the movant, we must view the evidence and its reasonable inferences in the light most favorable to
the non-movant. See Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co., 391
S.W.2d 41, 47 (Tex. 1965). We are not required to ascertain the credibility of affiants or to
determine the weight of evidence in the affidavits, depositions, exhibits and other summary judgment
proof. See Gulbenkian v. Penn, 252 S.W.2d 929, 932 (Tex. 1952). The only question is whether
or not an issue of material fact is presented. See Tex. R. Civ. P. 166a(c).

 Once the movant has established a right to summary judgment, the non-movant has the
burden to respond to the motion for summary judgment and present to the trial court any issues that
would preclude summary judgment. See, e.g., City of Houston v. Clear Creek Basin Auth., 589
S.W.2d 671, 678-79 (Tex. 1979). The non-movant can also defeat the motion by conceding that the
material facts are undisputed, but convincing the court that the movant's legal position is unsound. 
American Med. Elec., Inc. v. Korn, 819 S.W.2d 573, 576 (Tex. App.-Dallas 1991, writ denied). 
All theories in support of or in opposition to a motion for summary judgment must be presented in
writing to the trial court. See Tex. R. Civ. P. 166a(c). If a theory is not expressly presented to the
trial court, it shall not be considered on appeal as grounds for reversal. Id. When a summary
judgment does not specify or state the grounds relied on, as in the instant case, the summary
judgment will be affirmed on appeal if any of the grounds presented in the motion are meritorious. 
See Harwell v. State Farm Mut. Auto. Ins. Co., 896 S.W.2d 170, 173 (Tex. 1995). 

 Where both parties file a motion for summary judgment, and one is granted and one is
denied, we should review the summary judgment evidence presented by both sides, determine all
questions presented, and render such judgment as the trial court should have rendered. Lubbock
County v. Trammel's Lubbock Bail Bonds, 80 S.W.3d 580, 583 (Tex. 2002). In doing so, we first
review the order granting summary judgment and if we determine the order was erroneous, we
review the trial court's action in overruling the denied motion. See Tobin v. Garcia, 159 Tex. 58,
60, 316 S.W.2d 396, 398 (1958). Each party must carry his burden and neither may prevail because
of the failure of the other to discharge his burden. State Farm Lloyds v. C.M.W., 53 S.W.3d 877,
883 (Tex. App.-Dallas 2001, pet. denied). We may either affirm the judgment, or reverse and render
the judgment the trial court should have rendered, including one that denies both motions. 
Gramercy Ins. Co. v. MRD Inv., Inc., 47 S.W.3d 721, 724 (Tex. App.-Houston [14th Dist.] 2001,
pet. denied) (citing Jones v. Strauss, 745 S.W.2d 898, 900 (Tex. 1988)). We may also render
judgment for the other movant, Jones, 745 S.W.2d at 900, provided that both parties sought final
judgment relief in their cross motions for summary judgment. CU Lloyds of Texas v. Feldman, 977
S.W.2d 568, 569 (Tex. 1998). 

 Ordinarily, a summary judgment cannot be based entirely upon the failure of a plaintiff to
state a cause of action unless the defendant levels a special exception identifying the deficiency, thus
affording the plaintiff an opportunity to amend his pleading to state a cause of action. See In the
Interest of B.I.V., 870 S.W.2d 12, 13-14 (Tex. 1994). However, an order granting summary
judgment on the pleadings, when the defendants did not specially except before moving for judgment
as a matter of law, is not reversible error in every instance. See Hidalgo v. Surety Sav. & Loan
Ass'n, 462 S.W.2d 540, 543 (Tex. 1971); see also Chandler v. Gillis, 589 S.W.2d 552, 554 (Tex.
Civ. App.-El Paso 1979, writ ref'd n.r.e.)("Certainly, there are those cases upon which a summary
judgment may be based upon the pleadings alone."). Pleadings may contain judicial admissions
through which a party pleads himself out of court. See Gerstacker v. Blum Consulting Eng'rs, Inc.,
884 S.W.2d 845, 850 (Tex. App.-Dallas 1994, writ denied). Summary judgment is also proper when
the plaintiff pleads facts which affirmatively negate his cause of action. Pentad Joint Venture v.
First Nat'l Bank, 797 S.W.2d 92, 97 (Tex. App.-Austin 1990, writ denied). Similarly, if the
pleading deficiency is of the type that cannot be cured by an amendment, a special exception is
unnecessary and a summary judgment based on the pleading's failure to state a legal claim is
appropriate. Harsfield v. Wisdom, 843 S.W.2d 221, 224 (Tex. App.-Amarillo 1992, writ denied).

 In a sense, the recently-adopted no-evidence summary judgment rule authorizes summary
judgment on the pleadings. For example, under Rule 166a(i), if the movant-defendant files a motion
identifying the elements of the plaintiff's causes of action as to which there is no evidence (as those
causes of action are pleaded by the plaintiff), the trial court is required to grant summary judgment
unless the plaintiff produces summary judgment evidence raising a genuine issue of material fact on
the challenged element or elements. Tex. R. Civ. P. 166a(i). None of Appellees' motions purport
to be no-evidence motions, however, so we will not consider them to be so. (1) 

 

Motions for Summary Judgment

 T.D.C.J.-I.D. and U.T.M.B. filed a motion for summary judgment asserting that they were
not "persons" under section 1983, and that Denson failed to state a claim against them under the
TTCA.

 Linthicum, Mosley, Pederson, Eaton and Johnson filed a motion for summary judgment
claiming that they were not liable under section 1983 in their official capacities because they were
not "persons" as that term is defined, and that they were not liable under section 1983 in their
personal capacities because there was no showing of deliberate indifference in violation of the Eighth
Amendment. Further, they claimed that they could not be held liable because they had no personal
involvement in Denson's treatment, and because they were entitled to qualified immunity. Lastly,
they asserted that they were not liable under the TTCA because individuals may not be sued under
the TTCA. 

 Orig, Gotcher, Kuykendall and Buchanan filed a motion for summary judgment arguing that
they could not be held liable under section 1983 in their personal capacities because they were not
deliberately indifferent to Denson's injury in violation of the Eighth Amendment. They also asserted
that even if they were deliberately indifferent to Denson's injury, they were protected by qualified
immunity. Further, they urged the court to find that they, as individuals, could not be sued under the
TTCA. 

 Denson filed motions for summary judgment on Appellees' violation of the Eighth
Amendment and on Kuykendall's retaliatory actions. 

 In ten issues, Denson contends that the trial court erred in granting Appellees' motions. 
Specifically, Denson challenges whether Appellees conclusively established the absence of any
genuine question of material fact and that they were entitled to judgment as a matter of law on the
following issues: (1) whether Appellees were negligent or grossly negligent in regard to their
treatment of Denson; (2), (4), (5), and (6) whether Denson stated a cause of action against T.D.C.J.-I.D. and U.T.M.B. under the TTCA; (3) whether Denson stated a cause of action in which Appellees
can be held liable in their individual capacities; (7) and (8) whether Denson stated any cognizable
claims against Appellees; (9) whether Calhoun, Johnson, Eaton and Kuykendall were persons in
authority at T.D.C.J.-I.D. and U.T.M.B.; and (10) whether Appellees showed deliberate indifference
to Denson's medical plight in violation of the Eighth Amendment. 

 Pro se pleadings are to be reviewed and evaluated by standards less stringent than those
applied to formal pleadings drafted by lawyers. Thomas v. Collins, 860 S.W.2d 500, 503 (Tex.
App.-Houston [1st Dist.] 1993, writ denied). Thus, this court must review Denson's petition and
pleadings with patience and liberality to determine the merits of the complaints. Johnson v.
McAdams, 781 S.W.2d 451, 452 (Tex. App.-Houston [1st Dist.] 1990, no writ). Accordingly,
although Denson's issues on appeal are inartfully expressed, we will review the dismissal and both
the grant and denial of all motions for summary judgment filed in this case. Further, we will address
each cause of action as applied to the two governmental entities, the officials in their official
capacities, and the officials in their individual capacities, as it appears from the pleadings that this
is what Denson intended.


Dr. Jason Calhoun

 Denson purportedly appeals the trial court's grant of summary judgment for Dr. Calhoun. 
The trial court's order is not before us, however, because Dr. Calhoun's case was severed from the
remaining defendants after his motion was granted. Thus, Denson must file a separate appeal for
us to consider Dr. Calhoun's judgment. 

 

42 U.S.C.A. § 1983

 Denson's suit is partially brought against Appellees pursuant to 42 U.S.C.A. § 1983, which
provides, in pertinent part:


 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or
Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United
States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or
immunities secured by the Constitution and laws, shall be liable to the party injured in action at law,
suit in equity, or other proper proceeding for redress.



42 U.S.C.A. § 1983 (West Supp. 2001).

 Section 1983 provides a remedy when any person acting under color of state law deprives
another of rights, privileges, or immunities protected by the U.S. Constitution or laws. Id. A court
must first determine whether the plaintiff has been deprived of such a right, privilege, or immunity. 
Emerson v. Borland, 927 S.W.2d 709, 717 (Tex. App.-Austin 1996, pet. denied). If this inquiry
is answered in the affirmative, the court determines whether the defendant is responsible for that
violation. Collins v. City of Harker Heights, 503 U.S. 115, 120, 112 S. Ct. 1061, 1066, 117 L. Ed.
2d 261 (1992); Emerson, 927 S.W.2d at 717. Only after this second inquiry has been answered in
the affirmative should the court consider whether the defendants are entitled to qualified immunity. 
See Siegert v. Gilley, 500 U.S. 226, 227, 231-32, 111 S. Ct. 1789, 1791, 1793, 114 L. Ed. 2d 277
(1991).

 If sued for damages, officials acting in their official capacities are not "persons" who may be
liable under section 1983. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71, 109 S. Ct.
2304, 2312, 105 L. Ed. 2d 45 (1989); Mitchell v. Amarillo Hosp. Dist., 855 S.W.2d 857, 866 (Tex.
App.-Amarillo 1993, writ denied). Therefore, it was appropriate for the court to grant summary
judgment for Orig, Gotcher, Linthicum, Mosley, Pederson, Kuykendall, Buchanan, Eaton and
Johnson on Denson's section 1983 claim against those parties in their official capacities. Further,
a claim may not be successfully pursued against T.D.C.J.-I.D. and U.T.M.B. under section 1983
because a state and its agencies are also not "persons" for the purpose of such claims. See Hockaday
v. T.D.C.J.-I.D., 914 F. Supp. 1439, 1445 (S.D. Tex. 1996). We affirm the trial court's grant of
summary judgment on these two issues in spite of Appellees' failure to file a special exception
because the claims are of a type that cannot be cured by an amendment. See Harsfield, 843 at 224.

Injunctive Relief

 Although an official in his official capacity may not be sued for damages, he may be sued for
injunctive relief. Thomas v. Brown, 927 S.W.2d 122, 125 (Tex. App.-Houston [14th Dist.] 1996,
writ denied). This is so because an action for prospective relief is not treated as an action against
the State. Id. Because Appellees failed to address this issue in their motions for summary judgment,
the trial court erred when it granted judgment for employee Appellees in their official capacities on
Denson's request for surgery on his deformed hand.

Cruel and Unusual Punishment

 Denson also sued employee Appellees in their individual (personal) capacities for violations
of the Eighth Amendment, which may subject a party to civil liability under 42 U.S.C.A. § 1983. 
The Eighth Amendment prohibits infliction of cruel and unusual punishment. U.S. Const. amend.
VIII. Because inmates are confined, they cannot seek medical help on their own and must rely on
prison authorities for medical treatment. Estelle v. Gamble, 429 U.S. 97, 103, 97 S. Ct. 285, 290,
50 L. Ed. 2d 251 (1976). Accordingly, deliberate indifference to "serious" medical needs constitutes
unnecessary and wanton infliction of pain that violates the Eighth Amendment. Id., 429 U.S. at 104,
97 S. Ct. at 291. In the context of the State's duty to provide medical care for inmates, "deliberate
indifference" constitutes the requisite "wantonness" state of mind. Wilson v. Seiter, 501 U.S. 294,
302, 111 S. Ct. 2321, 2326, 115 L. Ed. 2d 271 (1991). Mere negligence does not. Johnson v.
Lynaugh, 800 S.W.2d 936, 939 (Tex. App.-Houston [14th Dist.] 1990, writ denied).

Qualified Immunity

 While in the past some courts used the terms "qualified immunity" and "official immunity"
interchangeably, recent cases refer to the federal defense as "qualified immunity" and the state
defense as "official immunity." State v. Saenz, 967 S.W.2d 910, 913 n.2 (Tex. App.-Corpus Christi
1998, pet. denied). Qualified or "good faith" immunity shields government officials performing
discretionary functions from liability unless their conduct violates clearly established statutory or
constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457
U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982).


Analysis

 Denson brought this lawsuit complaining specifically of the fact that he was denied proper
medical treatment, prompt medical treatment, and repair of the deformity caused by the improper
and untimely medical treatment. Therefore, we must closely review the records to determine if there
is evidence that employee Appellees did not injure Denson by being deliberately indifferent to his
serious medical needs. (2) In support of their motion for summary judgment, Appellees offered the
affidavit of Dr. Robert Brock, which states the following:


 I am a physician licensed to practice medicine in the state of Texas. I am the Northern
Region Medical Director for the Texas Department of Criminal Justice, Institutional Division
(T.D.C.J.-I.D.). Tommie Denson, T.D.C.J.-I.D. #877907, has filed a lawsuit entitled Tommie Denson
v. T.D.C.J.-I.D., et al, Cause No. 38355. I have been requested by the Office of the Texas Attorney
General to review the complaint and medical records of the Plaintiff in regard to his allegations of
deliberate indifference to his serious medical needs during the period of September 2, 1999, through
February 9, 2000.

 I have reviewed the Plaintiff's medical records, psychiatric records, Chronic Clinic visits, and
grievances from June 1, 1999, through February 17, 2000. The Plaintiff fell on the floor in the shower
the night of September 2, 1999. Tito M. Orig, M.D., saw the Plaintiff the next morning (9/03/99),
evaluated him, and felt that a fracture of the fourth distal metacarpal of the left hand was present. He
ordered an x-ray of the left hand, which revealed a comminuted fracture of the head of the fourth 
metacarpal with the fracture line extending into the articular surface. The x-ray also observed an old
fracture in the 5th metacarpal. Once the x-rays were available, Dr. Orig referred the Plaintiff to Plastic
Surgery - Hand at U.T.M.B. Galveston. An appointment was set up, and he was scheduled into the
clinic on September 17, 1999. I do not have an explanation for the delay in consultation from 9/03/99
to 9/17/99 as it could have been caused by many reasons, from weather to transportation to clinical
scheduling problems due to excessive numbers of referrals to that particular clinic. The report on this
consultation by Hand Plastic Surgeon was "left hand volar displaced 4th metacarpal neck fracture,
which was two weeks old." The Plaintiff was given pain medication and instructions to which he
verbalized understanding. The Hand Surgeon made no recommendations for follow up.

 The Plaintiff was followed in a reasonable fashion and was seen frequently both for hand and
for foot complaints. According to the Progress Notes, on 9/28/99, his visit to the Orthopedic Hand
Clinic was canceled because there was no medical doctor available at that time. He was rescheduled
by U.T.M.B. Correctional Managed Care for the Ortho Foot and Hand Clinic on 11/02/99. He was
also followed by Telemed Orthopedics post operatively. The Plaintiff was examined at U.T.M.B.
Ortho Foot Clinic on 1/06/00 and released from the clinic. He continued to complain of pain, even
after being ordered and placed in large toe box shoes. He was rescheduled for reevaluation by the
Orthopedic Foot specialist in Galveston on 2/09/00. No further records were available after this date.

 The Plaintiff has numerous claims, but his major medical claim is that U.T.M.B. and his
physician should have known that delay in surgery for his hand would cause it to heal deformed. After
a metacarpal neck fracture of the fourth or fifth or both occur, the action of the interosseous muscles
can cause volar displacement of the metacarpal head, which creates a loss of the knuckle. Some
degree of angulation in the neck can be accepted in the 4th and 5th metacarpals because compensatory
motion at the carpometacarpal joint is available. This will still give a useful, functioning hand. 
Because of the overall mobility of the ring and little finger metacarpals, these fractures tend to do well
when treated conservatively as they tolerate a less than anatomic union.

 As to the [sic] his allegations of medical indifference, the nature and extent of the Plaintiff's
treatment by the medical staff at Coffield throughout 1999 regarding both his hand and foot complaints
is exemplary. He was followed monthly and often times much more frequently by the care providers. 
The Plaintiff's allegations of inadequate medical treatment are also not true. He was provided
specialty and sub-specialty clinic consultations and surgeries from these departments. He was
provided adequate follow-up both in clinics at U.T.M.B. Galveston and Telemedicine conferences.

 From the records that were provided to me, I find no evidence that there was deliberate
indifference to the Plaintiff's medical needs. He had timely consultations and follow-ups. Stiffness
of the metacarpal phalangeal joints is not uncommon after a metacarpal neck fracture. This stiffness
is generally the result of prolonged immobilization. More aggressive hand rehabilitation would help
the Plaintiff regain motion and function, if he has the proper attitude and willingness to put forth the
effort that would be required.

 Again, there is no evidence of medical indifference in this case - quite the contrary. I found
only evidence of good medicine.



 An expert's affidavit testimony will support summary judgment only if it is "clear, positive
and direct, otherwise credible and free from contradictions and inconsistencies, and could have been
readily controverted." See Tex. R. Civ. P. 166a(c); Wadewitz v. Montgomery, 951 S.W.2d 464, 466
(Tex. 1997). However, testimony comprising only legal conclusions is insufficient to support
summary judgment as a matter of law. Mercer v. Daoran Corp., 676 S.W.2d 580, 583 (Tex. 1984). 
Likewise, conclusory statements by an expert are insufficient to support or defeat summary
judgment. Id.; Anderson v. Snider, 808 S.W.2d 54, 55 (Tex. 1991). 

 After a review of Dr. Brock's affidavit, we first note that he failed to testify to the applicable
standard of care utilized in treating the type of injury suffered by Denson. For example, Brock noted
that Orig diagnosed a fracture of the head of the fourth metacarpal, while the U.T.M.B. hand
specialist diagnosed a neck fracture of the fourth metacarpal; but Brock failed to opine as to which
diagnosis was correct. He also did not state whether the medical treatment required by the different
types of fractures would be different. Nor did he explain what he meant by treating the injury
"conservatively."

 Although Brock stated that his opinions were based upon the medical records, a review of
those records reveals otherwise. For example, the medical records refer on several occasions to the
deformity of Denson's hand; but Brock referred only to "stiffness." Also, Brock indicated that
medical personnel repeatedly examined and treated Denson's broken hand. But the records show
that the majority of treatment given to Denson was for his bunions and asthma. No treatment was
provided for Denson's hand except (1) the initial x-rays and splint done by Dr. Orig, (2) the
U.T.M.B. physician's examination and diagnosis of the fracture and his instructions that Denson
perform range of motion exercises, and (3) Dr. Orig's subsequent x-rays which showed that the hand
was deteriorating. In fact, although the U.T.M.B. specialist recommended a certain pain medication
for Denson, the prison medical personnel refused to change his medications from those he was
already taking for his foot pain. 

 Further, Brock incorrectly stated that Denson received "specialty and sub-specialty clinic
consultations and surgeries from these departments," and that he was "followed . . . post-operatively"
by Telemed Orthopedics when, in fact, no surgery was performed on Denson's hand. And Brock
spoke extensively of Denson's foot problems, even though the case before us does not involve the
medical treatment of Denson's bunions. Of extreme importance is Brock's statement that he did not
know the reason why Denson was not sent to a specialist until two weeks after the initial injury. And
nowhere in his affidavit did Brock state that it was not necessary for Denson to see a specialist, that
he did not need to see a specialist sooner that two weeks after the injury, or what a specialist should
have or could have done if he had seen Denson's hand earlier. 

 We agree with employee Appellees' position that only those individuals personally involved
in the violation of a constitutional right can be held liable under section 1983. See Woods v.
Edwards, 51 F.3d 577, 583 (5th Cir. 1995); see also Monell v. Dep't of Social Svcs., 436 U.S. 658,
692-93, 98 S. Ct. 2018, 2036-37, 56 L. Ed. 2d 611 (1978)(section 1983 will not support a claim
based on respondeat superior or vicarious liability). But even though Appellees Johnson, Mosley,
Linthicum, Pederson and Eaton assert in their appellate brief that they had no personal involvement
in the medical decisions which lead to the deformity of Denson's hand, Brock's affidavit did not
support this contention, since he failed to mention any one of those Appellees. Neither did Brock
allude to the elements of the affirmative defense of qualified immunity. Consequently, Brock's
affidavit was incompetent to support summary judgment for any Appellee in his individual capacity. 
 Appellees also attached several years of Denson's medical records, as well as memos and
letters relating to Denson's injury. But in a review of those records, we found the following:


 Denson suffered a comminuted fracture of the head of the fourth distal metacarpal of the left
hand with fracture line extending into the articular surface;
 Medical personnel noted that Denson's fourth metacarpal had no range of motion;


3. On a subsequent evaluation, there was obvious deformity in the fourth metacarpal;

4. Medical personnel later observed an obvious deformity and decreased grip strength;

 5. Denson's hand was never casted, and he was told by the specialist at U.T.M.B. that he had
arrived too late for treatment;

 6. Denson's finger was healing in the same position as when he first arrived at the prison
medical facility;


 During a subsequent examination, it was noted that there was greater impaction and
angulation than during a previous evaluation; and
 Upon total healing, medical personnel noted a ten-degree angulation of the fourth metacarpal.


 In addition to Denson's medical records, employee Appellees also attached to their motions
numerous memos and letters. Many of those documents show that at least some of the Appellees
knew of the seriousness of Denson's medical needs and did nothing about them. The following
represent a sample of documents which support Denson's claim of knowing indifference, rather than
Appellees' claims of excellent medical care and no knowledge of serious medical need. The first
is an interoffice communication dated November 30, 1999, from George Crippen, Nurse
Investigator, Office of Professional Standards, through Appellee Linthicum to Calhoun, Medical
Director of U.T.M.B./T.D.C.J.-I.D. Correctional Managed Health Care:


 During the routine investigation of the Patient Liaison allegation, the Patient Liaison
Investigator identified areas of concern as follows:

 Offender Tommie Denson, T.D.C.J.-I.D. # 687907, complained he sustained a fracture of his
left hand on 09-03-99. A copy of the x-ray report is attached for your review. However, the offender
was not referred to HG until 09-17-99. Would you please review the unit management of this case and
provide this office with a brief written narrative summary of your findings and recommendations.

 . . . .

 We believe some corrective action should be taken to remedy this specific issue and/or to
prevent future similar events. . . .


This second example is a letter from Crippen to Appellee Kuykendall dated January 13, 2000:


 I received your letter dated 12/17/99 concerning offender Tommie Denson, T.D.C.J.-I.D.
#687907. This inquiry was sent due to the delay in the offender being seen at Hospital Galveston for
a fracture to his hand. I did not have the data that supported that the delay was due to Hospital
Galveston's decision. The fracture occurred on 09/03/99 and the offender was not seen until 09/17/99,
which appears to be an extended period of time from the original occurrence of the fracture. Hence,
the inquiry was sent to Dr. Calhoun due to his expertise in Orthopedics. Dr. Calhoun's review of the
case in regards to the access issue would be helpful in determining if the delay in accessing specialty
care was within acceptable practice guidelines for a patient with this type of fracture/injury.


And the following is a letter from Jackie Ullrich with the Texas Inmate Family Association to
Appellee Kuykendall dated April 26, 2000:


 I have not written to you in quite a while but his case deserves to be brought out into the
bright light. Because of an untimely referral to an orthopedic specialist, offender Tommie Denson,
687907, now has substantial diminished use of his left hand, and he is left-handed. His records reflect
what occurred. I would appreciate your reviewing his record and having a medical person personally
have a look at his hand. Perhaps a reply could be forthcoming.

 This is not the only situation that I have worked on that parallels this. This is a shame to all
of us. Thank you for your hard work and caring.


 There was no summary judgment evidence showing that Denson's hand was treated or
repaired, other than with the initial splinting and bandaging. This is in spite of the fact that
Denson's hand noticeably deteriorated over time. There was nothing in Appellees' summary
judgment evidence to show that they did not know of an excessive risk to Denson's health. Nor was
there anything in their summary judgment proof to show that they did not disregard an excessive risk
to Denson's health.

 We do agree from reviewing Denson's medical records that he was seen and treated by
various medical personnel at the prison infirmary. However, we disagree with employee Appellees'
interpretation of a Fifth Circuit opinion that evidence of sick call, examinations, diagnoses, and
medications are sufficient to entitle Appellees to judgment as a matter of law on allegations of
deliberate indifference. Citing Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995)("Medical
records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations
of deliberate indifference." [emphasis added]). Consequently, employee Appellees failed to
conclusively establish the absence of any genuine question of material fact and that they were
entitled to judgment as a matter of law on the issue of deliberate indifference to a serious medical
need. Further, Appellees failed to prove all essential elements of an affirmative defense, such as
qualified immunity. Therefore, the burden did not shift to Denson to respond to the motion and
present to the trial court any issues that would preclude summary judgment. We hold, therefore, that
the trial court erred when it granted summary judgment for employee Appellees on Denson's section
1983 claim of cruel and unusual punishment.

Denson's Counter-Motion for Summary Judgment 

 Denson filed a counter-motion for summary judgment on this issue. He offered the following
summary judgment evidence:

1. Letter from Appellee Linthicum to Denson, dated 9/29/99:


 I am in receipt of your recent correspondence addressed to the T.D.C.J.-I.D. Health Services
Division. Since September 1, 1994, the delivery of health care on all T.D.C.J.-I.D. units has been
contracted to the Correctional Managed Health Care Committee. That committee, in turn, contracts
with two of the State's university health sciences centers - The University of Texas Medical Branch
in Galveston (U.T.M.B.) and Texas Tech University Health Sciences Center in Lubbock (TTUHSC). 
This managed care program was implemented by the Texas State Legislature.

 The delivery of health care at your unit is provided by U.T.M.B. The medical employees at
your unit of assignment work for U.T.M.B. or a sub-contractor - not T.D.C.J.-I.D. Therefore, the
T.D.C.J.-I.D. Division Director for Health Services has no jurisdiction in requiring U.T.M.B. to
provide a specific plan of treatment. I can, and will, on your behalf forward your concerns to the
U.T.M.B. medical director requesting that he, or his representative address your medical concerns. 
I am also requesting that Dr. Calhoun, or his representative forward a copy of their written response
to the attention of Guy Smith in the Patient Liaison Program.


2. Investigative report filed by Appellee Eaton dated 10/11/99:


 Per medical record: On 9-3-99 Tommie Denson was seen and treated by Dr. Orig for a fracture of the
4th metacarpal of his left hand. He received x-ray, Ibuprophen 600 mg., 5 day cell pass, 30 day
follow-up appointment, elavil, ace wrap and splint. He was also referred to a specialist and is
scheduled to be seen before the end of Sept. '99.



3. Investigative Response Sheet dated 10/11/99:



 Per your medical records: on 9-3-99, you were seen and treated by Dr. Orig for a fracture of the 4th
metacarpal of your left hand. You received x-ray, ibuprophen 600 mg., 5 day cell pass, 30 day follow-up appointment, elavil, ace wrap and splint. You were also referred to a specialist. Treatment is being
provided as medically indicated. No further action warranted.


4. Health Services Grievance Worksheet dated 11/8/99:


 Fx reported to medical 9/3/99. MD ordered x-ray and referral to HG-ortho the same day. 9/17/99 he
was seen at EZ but no treatment was given. I/M(?) has an ace bandage and splint at this time. Seen
by HG. Give ROM exercises and care plan explained. No return needed.


5. Step One Offender Grievance Form completed by Denson on 11-12-99:


 Who did you talk to (name, title)? J. Eaton


 When? 11-8-99


 What was their response? We rescheduled your appointment to telemed. That's all I can do.


 What action was taken? None. Here's my complaint being raised for the 4th or 5th time.


 State your grievance in the space provided. Please state who, what, when, where and disciplinary case
number if appropriate: To confirm the date I checked my medical records. I seen Dr. Tito Orig 9-3-99
and broke my hand 9-2-99, not 9-1-99. Complaint [sic] I broke my hand on 9-2-99 and went to a sick
call 9-3-99, which Dr. Tito Orig had it x-rayed, and seen the fracture but didn't get me to the hospital
until 15 days later. Now I'm being subjected to permanent physical injury due to negligence on Dr.
Orig's part. I'm in need of compensation for the physical deformities, and the mental anguish,
emotional distress and anxiety and frustration I've been subjected to. Also I'm wanting to be sent to
a reconstructive bone surgeon to have my hand fixed. It's been 2 months and my hand is not fixed yet. 
I've gotten the run around from day one and have been because of a complaint I filed against the
medical dept. - 12-99-00177-CV. I have been denied medical [sic] proper medical treatment by T.
Orig, K. Kuykendall, J. Eaton (L. Linthicum and company Health Care Management team), et. al.

 

 Administration's Decision: You were seen by a Hand and Foot Specialist at the Beto Unit via Telemed
on 11/18/99. Your treatment is being taken care of as medically indicated. I defer to the professional
judgement of the physicians. No further action warranted. [dated 12/6/99] 


6. Step Two Offender Grievance Form completed by Denson on 12-9-99: 


 The signature of authority on Step 1 just arrived to Coffield and is taking the word of Coffield medical
staff. If my records are completely examined I was seen for my feet and was scheduled for corrective
surgery. I seen a plastic surgeon 09-17-99 and have not I repeat read my lips I have not seen anyone
but Virginia Buchanan who only told me you were supposed to have seen telemed about your hand
as well as your feet. I told Mrs. Buchanan that they didn't see me. This continuously run around
shows deliberate indifference. My hand has never been reconstructed nor has been placed in a cast. 
I've beg and beg and beg and beg for my hand to be reconstructed and still I get the run around. 
Please help me. My hand is deformed and hurts constantly. I can't get any pain medication or have
my hand fixed. HELP ME PLEASE.

 

 Appellate Decision and Reason: Your appeal requesting compensation for a broken hand, an
appointment with a bone surgeon as soon as possible, or to be released to have hand repaired has been
reviewed. Monetary compensation is not a remedy available to you through the grievance mechanism. 
You were evaluated in the Beto I orthopedic telemedicine clinic on 11-18-99 and you are scheduled
for an orthopedic appointment in Galveston during January 2000. No corrective action is warranted.


7. Letter from Appellee Linthicum to Ullrich dated May 4, 2000:


 Thank you for your letter concerning offender Tommie Denson, T.D.C.J.-I.D. #687927. A
release of information has been obtained from offender Denson.

 I am familiar with this case as the offender has corresponded with T.D.C.J.-I.D. Health
Services on numerous occasions regarding this matter. Under the Correctional Managed Health Care
program implemented by the Texas State Legislature (see Gov't Code 501.059), the T.D.C.J.-I.D.
medical director or division director of health services has no authority to mandate a specific treatment
plan for offenders. Similarly, I have no supervisory authority over the university medical directors,
regional or unit-based medical staff. My position has been relegated to that of a patient advocate. 
That is to say when offenders, their families or any other interested third party bring forth an
offender's health concerns, my staff and I investigate the matter then forward our findings and requests
for corrective action to the appropriate university (ie U.T.M.B. or Texas Tech) medical director for
their final handling and disposition. However, I have no authority to mandate that a specific course
of action be taken.

 In the case of offender Denson, when T.D.C.J.-I.D. Health Services staff were made aware
of this situation by the offender, an extensive investigation was completed by the Patient Liaison staff. 
Their findings were as follows. The fracture to offender Denson's hand occurred on 9/3/99. He was
seen by the unit physician that same day. At 0820 hours, an x-ray was obtained which showed a
fracture of the left, 4th metacarpal bone of the hand. The unit physician completed an expedited
referral to Plastic Surgery Service and talked with U.T.M.B. Correctional Managed Health Care
Utilization Review staff to schedule an appointment. According to the Coffield Unit medical director,
both the Plastic Surgery Service and Utilization Review at U.T.M.B. were aware of the nature of the
injury but those two services decided on an appointment date of 9/17/99.

 A review of the Medical Specialty Clinic Appointment screen shows that offender Denson
was seen at U.T.M.B. Orthopedic Clinics on 1/6/2000 and 3/9/2000. The Orthopedic Clinic
appointment on 1/6/2000 recommended that offender Denson received special shoes (ie wide toe box
shoes) from Brace and Limb clinic. The 3/6/00 Orthopedic appointment noted that offender Denson
is still waiting to receive special shoes with wide toe box from Brace and Limb. Recommendations
were to return to Telemedicine Clinic if the problem persists. There were no recommendations about
his left hand.

 My office will forward an action request to the Coffield Unit medical director requesting re-evaluation of offender Denson's left hand due to complaints of diminished use of that hand.

 

8. Denson's statement in his second motion for summary judgment:


 The attached exhibits will demonstrate the run-around Denson has gotten from the day of his injury
and still today Denson is suffering a cosmetic disfigurement, pain, locking of his injured finger (hand)
tingling in his forearm, and not being able to hold or firmly grip objects.


9. Letter from Patricia Massey, Patient Liaison Program, to Ullrich dated 10/12/99:


 As you know, the health care of all T.D.C.J.-I.D. facilities are contracted and in this case, the
University of Texas Medical Branch in Galveston (U.T.M.B.) is the responsible party for Offender
Denson's medical care. Dr. Lannette Linthicum has forwarded his issues to Dr. Jason Calhoun, M.D.,
Medical Director for the U.T.M.B. Correctional Managed Health Care, on or around September 28,
1999. She has asked that he respond to the offender.


10. Denson's statement in his third motion for summary judgment:


 The defendants T. Orig, V. Buchanan, M. Gotcher, K. Kuykendall, J. Eaton has had more
than enough time to get Denson to a hand specialist for Denson has repeatedly beg and beg the
defendants for help which resulted in the run-around.

 Denson seeks summary judgment for the deformities, and or cosmetic disfigurement he has
suffered, as well as pain and suffering.

 Denson still to this date 3-28-00 is suffering locking of his injured finger tingling in his
forearm, and not being able to hold or firmly grip objects.


11. Excerpt from Emergency Orthopedics - The Extremities, Third Edition by Robert R. Simon and
Steven J. Koenigsknecht regarding "head fracture," as diagnosed by Orig: 


 Treatment

 All metacarpal head fractures require referral for management and follow-up . . . . 

 Emergency management should include elevation, ice, analgesics, and immobilization of the hand in
a soft bulk dressing in the position of function. Metacarpal head fractures with large intra-articular
defects generally require intraoperative fixation to establish a near normal joint relationship. For small
intra-articular fragments, most consultants will immobilize the hand only for a short time and then
begin motion exercises. Many of these fractures may require arthroplasty later . . . . 


 Complications

 Metacarpal head fractures may be associated with debilitating hand complications.


 Rotational malalignment must be diagnosed and corrected early in the management of these


 fractures . . . . 



12. Excerpt from Emergency Orthopedics - The Extremities, Third Edition by Robert R. Simon and
Steven J. Koenigsknecht regarding "neck fracture," as diagnosed by U.T.M.B. physician: 


 Treatment

 Three important points must be stressed in the treatment of metacarpal neck fractures.

 1. Rotational deformities must be diagnosed and treated early.

 2. The acceptance of volar angulation is dependent on the normal mobility of the involved
metacarpal. . . .


 Class B Type I (Angulation of Less than 35 degrees, Metacarpal 4 . . .)

 Reduction of this fracture is optional when the fifth metacarpal is involved but should be attempted
on fourth metacarpal fractures. These fractures can be reduced in most cases by adhering to the
following steps:


 An ulnar nerve wrist block should be used to achieve adequate anesthesia.
 Finger traps should be placed on the involved digits for 10 to 15 minutes to disimpact the
fracture.
 After disimpaction, the MP joint should be flexed to 90 degrees as well as the PIP and DIP
joints.
 The physician should now apply a volar directed force over the metacarpal shaft while at the
same time applying dorsally directed pressure over the flexed PIP joint. Reduction should
be completed with this maneuver.



 Immobilization with a palmar plastic splint to the palmar crease and a dorsal splint extending
to, but not including the PIP, should be accomplished with the wrist extended 30 degrees and
the MP joints flexed to 90 degrees.
 A radiographic examination postreduction and at 1 week is recommended to ensure
maintenance of proper position.



 Generally it is recommended to begin PIP and DIP motion without delay. Protected MP
motion can begin in 3 to 4 weeks. There is some evidence to support immediate
immobilization of single metacarpal 2 to 5 subcapital fractures after adequate reduction with
functional casting applied immediately prior to reduction. This approach may be considered
after orthopedic consultation.



13. Letter from Crippen to Denson dated 11/16/99:


 Your letter to Lannette Linthicum, M.D., Division Director for Health Services was
forwarded to the Office of Professional Standards for investigation and response. In your letter you
complain that you want your hand repaired. You complain that there was a delay in treatment and that
now Hospital Galveston will not surgically repair your hand. You state that this has caused you a
deformity and handicap. You also state that you want to know the name of the approving entity for
transport to U.T.M.B. Hospital Galveston. You further ask if a unit physician can modify specialist
recommendations. 

 A review of your medical record shows that you are scheduled for a follow up appointment
with Orthopedics from Hospital Galveston in November 1999. At this appointment, the issues
concerning the surgery, etc. can be addressed. The concern about the delay in treatment will be
forwarded to the Regional Medical Director, Dr. Robert Brock, M.D., for his review and
consideration. Method of transport to Hospital Galveston is determined by the treating physician. The
unit physician has the authority to either accept or change recommendations by consulting physicians
at Hospital Galveston.



 The above-cited evidence, along with Denson's medical records, certainly raised a fact issue
as to whether some of the employee Appellees were deliberately indifferent to a serious medical
need. And the evidence showed that the accepted medical treatment for a comminuted fracture of
the fourth metacarpal is far different from the treatment that was received. It also indicated that
some of the employee Appellees became aware of the disintegration of Denson's hand shortly after
the accident, but that they took no action to impede the disintegration of Denson's hand or to restore
its original function. However, the evidence fell short of conclusively establishing the absence of any
genuine question of material fact. Consequently, the burden did not shift to Appellees to respond
to the motion and present to the trial court any issues that would preclude summary judgment. We
hold, therefore, that the trial court did not err when it denied Denson's motion for summary judgment
on his section 1983 claim of cruel and unusual punishment.

Retaliation

 Denson also pleaded that Kuykendall failed to have his deformed hand repaired in retaliation
for Denson's filing of a previous lawsuit against him in regard to Denson's foot condition. It is well
settled that prison officials may not retaliate against a prisoner for availing himself of the courts or
attempting to defend his constitutional rights. Woods v. Edwards, 51 F.3d 577, 580 (5th Cir. 1995). 
An inmate must show the violation of a specific constitutional right and establish that, but for the
retaliatory motive, the violation would not have occurred. Johnson v. Rodriguez, 110 F.3d 299, 310
(5th Cir. 1997); Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995). "This places a significant
burden on the inmate. Mere conclusionary allegations of retaliation will not withstand a summary
judgment challenge. The inmate must produce direct evidence of motivation or, the more probable
scenario, allege a chronology of events from which retaliation may plausibly be inferred." Id.

 In his petition, Denson gave very few "facts" to support his allegation of retaliation. But
even though Denson failed to state a retaliation claim, he should have been given the opportunity to
amend his petition; however, Appellees failed to file a special exception. Because this was the type
of defect which could have been cured by an amendment, the trial court erred when it granted
summary judgment for Kuykendall on Denson's allegation of retaliation under section 1983.

Denson's Motion for Summary Judgment

 Denson filed a motion for summary judgment alleging that Kuykendall retaliated against him
by refusing to give or authorize appropriate medical treatment for his serious medical needs. 
However, he made only a cursory statement as to his allegation:


 Denson was told to see Dr. K. Kuykendall about his feet problem and tryed [sic] to seek help for his
hand as well 2-9-00 and was told by Dr. K. Kuykendall (defendant) I don't see no reason in sending
you back to U.T.M.B. and you can add that to your lawsuit.


Denson argued that Kuykendall retaliated against him because he had filed a previous lawsuit against
Kuykendall in regards to his treatment of Denson's bunions. We hold, however, that Denson's
evidence does not conclusively establish the absence of any genuine question of material fact as to
Kuykendall's alleged retaliatory actions. Consequently, the burden did not shift to Appellees to
present to the trial court any issues that would preclude summary judgment. Accordingly, the trial
court did not err when it denied Denson's motion for summary judgment on his claim of retaliation
under section 1983. 

Conspiracy

 Denson pleaded that employee Appellees conspired to give him sub-par medical care, to
delay treatment, and to fail to reconstruct his hand. However, in order to state a claim for conspiracy
under section 1983, a plaintiff must establish conspiracy in some detail and provide some factual
basis for supporting the existence of conspiracy; conclusory statements suggesting conspiracy are
not enough to state a claim. Dolenz v. Akin, No. 3:95-CV-1605-P, 1997 U.S. Dist. LEXIS 23445,
at *15-16 (N.D. Tex. 1997). In his pleadings, Denson generally alleged that Appellees engaged in
an ongoing conspiracy to deny Denson prompt and proper medical treatment. However, he did not
articulate specific facts to support his allegation. 

 Even though Denson failed to state a conspiracy claim, he should have been given the
opportunity to do so; however, employee Appellees failed to file a special exception complaining
that Denson had failed to state a cause of action. Because this is the type of defect which could have
been cured by an amendment, we must reverse the trial court's grant of summary judgment on
conspiracy under section 1983. 


Texas Tort Claims Act

 In addition to his section 1983 claims, Denson also pleaded negligence, intentional infliction
of emotional distress, conspiracy and retaliation under the TTCA. He further requested injunctive
relief. 

 Sovereign immunity or governmental immunity means that the State may not be sued in tort,
and the State is protected from vicarious liability for the tortious acts of its agents or employees
acting in the scope of their employment. Davis v. City of Palestine, 988 S.W.2d 854, 857 (Tex. App.
-Tyler 1999, no writ). The State and other governmental entities are immune from liability unless
liability is waived by a constitutional or legislative provision. University of Tex. Med. Branch v.
York, 871 S.W.2d 175, 177 (Tex. 1994). The TTCA is one such legislative provision which waives
governmental liability under certain circumstances.

 The TTCA does not provide for recovery against individuals employed by the state. Aguilar
v. Chastain, 923 S.W.2d 740, 744 (Tex. App.-Tyler 1996, writ denied). A person making a claim
under the TTCA must sue the governmental unit responsible for allegedly causing the harm in order
to invoke the waiver of sovereign immunity. Tex. Civ. Prac. & Rem. Code Ann. § 101.025(6);
Birdo v. Dubose, 819 S.W.2d 212, 215 (Tex. App.-Waco 1991, no writ). Therefore, the employee
Appellees in both their official and individual capacities were not proper parties to this suit to the
extent that they were being sued under the TTCA. The trial court did not err when it granted those
parties' motions for summary judgment on those claims.

 In regard to Denson's claim against T.D.C.J.-I.D. and U.T.M.B. under the TTCA, whether
a governmental entity may be held liable for the action of an employee involves a two-step analysis; 
the first step is whether the claim arises under one of three specific areas of liability. See Alvarado
v. City of Brownsville, 865 S.W.2d 148, 155 (Tex. App.-Corpus Christi 1993), rev'd on other
grounds, 897 S.W.2d 750 (Tex. 1995). The second step is whether the claim lies within an
exception to the waiver of sovereign immunity. Id. The determination of a governmental entity's
negligence will be made only after a claimant has cleared these two statutory hurdles. The three
specific areas of liability in which immunity has been waived are (1) injury caused by an employee's
use of a motor-driven vehicle, Tex. Civ. Prac. & Rem. Code Ann. § 101.021(1); (2) injury caused
by a condition or use of tangible personal or real property, Tex. Civ. Prac. & Rem. Code Ann. §
101.021(2); and (3) claims arising from premise defects, Tex. Civ. Prac. & Rem. Code Ann. §
101.022. Salcedo v. El Paso Hosp. Dist., 659 S.W.2d 30, 31 (Tex. 1983).

 In his petition, Denson alleged that his injuries arose from the negligence of the individual
employees of T.D.C.J.-I.D. and U.T.M.B. in failing to provide prompt and proper medical treatment
for his broken hand. Denson alleged that the medical personnel negligently used medical equipment,
medical facilities, and motor vehicles used/not used to transport him to U.T.M.B., all of which
resulted in his personal injury. He also claimed that T.D.C.J.-I.D. employees were negligent in
misdiagnosing the serious nature of his injury by misinterpreting the x-rays of his hand.

 Also, Denson asserted a delay in medical treatment, which is in essence an allegation of non-use of tangible personal property and an error in medical judgment, neither of which are within the
statutory waiver. See T.D.C.J.-I.D. v. Miller, 51 S.W.3d 583, 587-88 (Tex. 2001). Also, use,
misuse, or nonuse of medical information does not constitute use, misuse, or nonuse of tangible
property under the TTCA. York, 871 S.W.2d at 179. Information is not tangible because it lacks
corporeal, concrete, and palpable qualities. Id.

 There is no question that equipment and facilities were used to treat Denson in this case. And
Denson was indisputably transported to U.T.M.B. in a T.D.C.J.-I.D. vehicle. However, that some
property belonging to a state agency is involved is not enough. Dallas County Mental Health &
Mental Retardation v. Bossley, 968 S.W.2d 339, 342 (Tex. 1998). In order to waive immunity
under the Act, that property's use must have actually caused the injury. Texas Nat'l Res. & Consv.
Comm'n v. White, 46 S.W.3d 864, 869 (Tex. 2001). In his petition, Denson did not allege that the
medical facilities and x-rays proximately caused his injury. Nor did he claim that a motor vehicle
caused his injury. However, in a liberal construction of his petition, Denson did allege that the
negligent use of medical equipment, the splint and ace bandage, caused the deformity to his hand. 
Consequently, his claim did trigger the limited waiver of the TTCA. 

Official Immunity

 If employee Appellees are entitled to summary judgment based on official immunity,
U.T.M.B. and T.D.C.J.-I.D. are entitled to sovereign immunity via the official immunity of its
individual employees. See City of Alamo v. Holton, 934 S.W.2d 833, 836 (Tex. App.-Corpus
Christi 1996, no writ).

 As we stated earlier, federal "qualified immunity" and state law "official immunity" are
composed of different elements. Under state law, government officials are entitled to official
immunity from suit arising out of their performance of (1) discretionary duties (2) in good faith (3)
and within the scope of their authority. City of Lancaster v. Chambers, 883 S.W.2d 650, 653 (Tex.
1994). The burden is on the defendant to establish all elements of this affirmative defense. Id. If
an action involves personal deliberation, decision, and judgment, it is discretionary. Id. at 654. 

 An official acts in good faith if a reasonably prudent official could have believed his conduct
to be lawful in light of clearly established law and the information known at the time. Fowler v.
Szostek, 905 S.W.2d 336, 342 (Tex. App.-Houston [1st Dist.] 1995, no writ). To controvert
summary judgment proof of good faith, the plaintiff must show no person in the defendant's position
could reasonably have believed that the facts justified the defendant's acts. Id. An official can act
negligently and still meet the test for good faith. Heikkila v. Harris County, 973 S.W.2d 333, 336
(Tex. App.-Tyler 1998, pet. denied). Moreover, an expert's opinion testimony may establish good
faith, even if the expert is an interested witness, as long as the statements are more than mere
conclusory statements. Burrow v. Arce, 997 S.W.2d 229, 235 (Tex. 1999). 

 We find the agencies' motion for summary judgment in regard to Denson's state law claims
to be deficient. The motion claimed qualified immunity only as to Denson's section 1983 action,
and only the issue of qualified immunity under federal law was briefed. There was no argument,
either in their motion for summary judgment, or their appellate brief, that U.T.M.B. and T.D.C.J.-I.D. were also immune from suit on Denson's claims under state law because of the official
immunity of their employees. We hold, therefore, that Denson stated a cause of action under the Act
and that the trial court erred when it granted summary judgment for U.T.M.B. and T.D.C.J.-I.D.
based upon their claim of failure to state a cause of action and of sovereign immunity through their
employees' official immunity.

Other State Law Claims Against U.T.M.B. and T.D.C.J.-I.D.

 Denson also pleaded that U.T.M.B. and T.D.C.J.-I.D. were responsible for their employees'
acts of intentional infliction of emotional distress, conspiracy and retaliation. However, the TTCA
does not waive a governmental unit's immunity from those acts which concern intentional conduct
on the part of the agency's employee. See University of Tex. Med. Branch v. Hohman, 6 S.W.3d
767, 777 (Tex. App.-Houston [1st Dist.] 1999, pet. dism'd w.o.j.). This pleading deficiency is of
the type that cannot be cured by an amendment; therefore, the trial court properly granted summary
judgment for U.T.M.B. and T.D.C.J.-I.D. on intentional infliction of emotional distress, conspiracy
and retaliation.

 In addition to his other claims, Denson pleaded for injunctive relief to have his deformed
hand repaired. Sovereign immunity, which the TTCA waives in limited circumstances, does not
preclude a party from seeking equitable relief, such as a declaration of rights and injunctive relief. 
However, when a litigant "seeks injunctive relief that involves an [unlawful or unauthorized] activity
of a state agency, he must sue some individual in authority at that agency; he may not sue the agency
itself." Bagg v. University of Tex. Med. Branch, 726 S.W.2d 582, 584-85 (Tex. App.-Houston
[14th Dist.] 1987, writ ref'd n.r.e.). Because this claim is of a type that cannot be cured by an
amendment, the trial court did not err when it granted summary judgment in favor of U.T.M.B. and
T.D.C.J.-I.D. on Denson's request for injunctive relief. 

 Denson also alleged violations of Tex. Health & Safety Code § 591.024 (Vernon 1992)
and Tex. Gov't Code § 501.053 (Vernon 1998). However, neither of these statutes create a private
cause of action. See Denson v. T.D.C.J.-I.D., 63 S.W.3d 454, 462 (Tex. App.-Tyler 1999, pet.
denied). And this is the type of pleading deficiency which cannot be cured by an amendment.
Consequently, the trial court did not err when it granted summary judgment for U.T.M.B. and
T.D.C.J.-I.D. on these claims.


State Law Claims Against Governmental Employees

 Denson alleged three torts, intentional infliction of emotional distress, conspiracy and
retaliation, against the governmental employees in their official capacities. However, employee
Appellees in their official capacities may not be held liable for intentional torts. Hohman, 6 S.W.3d
at 777. This pleading deficiency is of the type that cannot be cured by an amendment; therefore, the
trial court properly granted summary judgment for Appellees in their official capacities on Denson's
intentional tort claims. 

 However, Denson also pleaded that employee Appellees in their individual capacities
intentionally caused him emotional distress by failing to provide proper and prompt medical
attention, and by failing to repair the deformity caused by inadequate and untimely medical
treatment. Employee Appellees' motions for summary judgment did not assert any defense, such
as official immunity, against Denson's state law claim. Neither did they attempt to negate at least
one element of his cause of action. Accordingly, we hold that the trial court erred when it granted
summary judgment for employee Appellees in their individual capacities on Denson's intentional
infliction of emotional distress claim. 

 Denson further complained that employee Appellees engaged in a conspiracy against him,
and that Kuykendall retaliated against him for filing an earlier lawsuit against him. As noted earlier
in our discussion of Denson's section 1983 conspiracy and retaliation claims, Denson failed to
articulate specific facts to support his allegations of conspiracy and retaliation. However, he should
have been given the opportunity to do so. Because this is the type of defect which could have been
cured by an amendment, we must reverse the trial court's grant of summary judgment on Denson's
state law conspiracy and retaliation claims against employee Appellees in their individual capacities. 
 Denson also pleaded for injunctive relief from employee Appellees to have his deformed
hand repaired. And Denson named several persons in authority at U.T.M.B. and T.D.C.J.-I.D. who
may be properly sued for injunctive relief. However, none of the employee Appellees addressed
Denson's request in their motions for summary judgment. Consequently, the trial court erred when
it granted summary judgment in favor of employee Appellees in their official capacities on Denson's
request for injunctive relief.

 As with the agencies, Denson also alleged violations of Tex. Health & Safety Code §
591.024 (Vernon 1992) and Tex. Gov't Code § 501.053 (Vernon 1998) against employee Appellees
in both their official and individual capacities. However, as we stated earlier, neither of these
statutes create a private cause of action. See Denson, 63 S.W.3d at 462. Since this is the type of
pleading deficiency which cannot be cured by an amendment, the trial court did not err when it
granted summary judgment for employee Appellees on these claims. 

 We overrule in part and sustain in part Denson's issues one through ten.

 

Medical Malpractice

 In addition to the summary judgment motions, Appellees filed a motion to dismiss Denson's
medical malpractice claims. In his eleventh issue, Denson complains that the trial court erred when
it granted the motion. Health care liability claims, such as those complained of by Denson, are
within the meaning and scope of the MLIIA, and must comply with the MLIIA's requirements. See
Tex. Rev. Civ. Stat. Ann. art. 4590i, §§ 1.02(13)(b), 1.03(a)(4) (Vernon Supp. 1999). T.D.C.J.-I.D., U.T.M.B., Orig, Gotcher, Linthicum, Mosley, Pederson, Kuykendall, Buchanan, Eaton and
Johnson filed a motion to dismiss based upon Denson's failure to provide an expert report required
by article 4590i.

 Previous to the dismissal, and pursuant to section 13.01(d), Denson had filed an "expert
report" written and signed by Chester Ingram, an inmate in the Coffield Unit of the T.D.C.J.-I.D. 
Ingram stated that he had obtained his doctor of medicine degree from the University of Alabama
Medical School, had completed a family practice residency at the Medical Center Hospital in
Georgia and had served as a physician in the United States Navy. Ingram averred that he actively
practiced medicine from 1978 to 1991.

 Under the MLIIA, an expert report is "a written report by an expert that provides a fair
summary of the expert's opinions as of the date of the report. . . ." Id. at § 13.01(r)(6). However,
an expert is qualified to give an expert report only if the person is a physician who



 is practicing medicine at the time such testimony is given or was practicing medicine at the
time the claim arose;
 has knowledge of accepted standards of medical care for the diagnosis, care, or treatment of
the illness, injury, or condition involved in the claim; and
 is qualified on the basis of training or experience to offer an expert opinion regarding those
accepted standards of medical care.



Id. at § 14.01(a). 

 Section 13.01(e) of article 4590i provides that if a claimant fails to file an expert report to
support a claim against a physician, the court may dismiss the claimant's action with prejudice. See
id. at § 13.01(e). And when, as here, a trial court dismisses a suit for failure to comply with the
report requirement, an appellate court will not reverse its decision unless the dismissal constitutes
an abuse of discretion. American Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d 873,
877 (Tex. 2001). The trial court abuses its discretion when it acts without reference to any guiding
rules or principles. Hanzi v. Bailey, 48 S.W.3d 259, 262 (Tex. App.-San Antonio 2001, pet.
denied). Where some evidence of substantive and probative value exists to support the trial court's
decision, no abuse of discretion occurs. Id.

 Although the report written by Ingram would have otherwise satisfied all of the requirements
of article 4590i, according to his own statement, Ingram was not practicing medicine at the time he
drafted the report nor was he practicing medicine at the time the claim arose. Consequently, Denson
failed to file an "expert report," and the trial court did not abuse its discretion when it dismissed
Denson's medical malpractice claims against the above-cited parties.

 Denson argued that Appellees waived their right to a dismissal because they did not file their
motion until November 5, 2001. He asserted that he filed his report on April 17, 2000, and that
Appellees' delay precludes the dismissal. We agree that article 4590i requires a party to object to
the qualifications of an expert witness in a medical malpractice case no later than twenty-one days
after the date the objecting party receives a copy of the witness's curriculum vitae. Tex. Rev. Civ.
Stat. Ann. art. 4590i, § 14.01(e) (Vernon Supp. 2000). However when, as here, a witness's
statement shows from the four corners of the document that he is not an "expert," a party must not
object to his qualifications, but must object that the affidavit is not an "expert report" at all. See
Chisholm v. Maron, 63 S.W.3d 903, 906-07 (Tex. App.-Amarillo 2001, no pet.). Section 14.01(e)
does not apply to a report which, on its face, is not an expert report. Therefore, the section 14.01(e)
requirement that a party must object to the qualifications of the expert witness within twenty-one
days does not apply. Id. at 908. 

 Denson cited Ocomen v. Rubio, 24 S.W.3d 461 (Tex. App.-Houston [1st Dist.] 2000, no
pet.) in support of his proposition that Appellees were estopped from filing their motion to dismiss. 
However, Ocomen involves an objection to the qualifications of a witness, not to the question of
whether the report could even be classified as an "expert report." Id.(appellants complained that the
physician was not an expert on Crohn's disease). We have found no authority, and Denson has cited
none, to support the argument that a defendant has a duty to point out the deficiencies in a report
within a certain number of days. See Doades v. Syed, 94 S.W.3d 664, 672 (Tex. App.-San Antonio
2002, no pet.). Accordingly, we hold that the trial court did not err when it dismissed Denson's
article 4590i claims for failure to satisfy the statute's expert report requirement. We overrule issue
eleven.


Conclusion

 We reverse the trial court's judgment for Smith and Cavin, and remand all issues pertaining
to those defendants to the trial court for further proceedings. 

 We affirm the judgment for T.D.C.J.-I.D. and U.T.M.B. on Denson's section 1983 claims,
which include a violation of the Eighth Amendment, intentional infliction of emotional distress,
conspiracy, retaliation, injunctive relief and Health and Safety Code and Government Code
violations. We also affirm the judgment on Denson's TTCA claims for intentional infliction of
emotional distress, conspiracy, retaliation, injunctive relief and Health and Safety Code and
Government Code violations. We reverse the judgment on Denson's TTCA claim for the negligent
use of tangible property and remand to the trial court for further proceedings. 

 We affirm the judgment for employee Appellees in their official capacities on Denson's
section 1983 and TTCA claims, which include a violation of the Eighth Amendment, intentional
infliction of emotional distress, conspiracy, retaliation, and violations of the Health and Safety Code
and the Government Code. But we reverse the judgment on Denson's request for injunctive relief
and remand to the trial court for further proceedings. 

 In regard to employee Appellees in their individual capacities, we affirm the judgment on
Denson's TTCA claims, request for injunctive relief, and violations of the Health and Safety Code
and the Government Code. We reverse the judgment on Denson's section 1983 claims of a violation
of the Eighth Amendment and conspiracy, as well as on Denson's state law claims of intentional
infliction of emotional distress and conspiracy, and remand to the trial court for further proceedings. 
 We reverse the judgment for Kuykendall on Denson's section 1983 and state law retaliation
claims, and remand to the trial court for further proceedings. 

 We affirm the judgment for all Appellees on Denson's MLIIA claims.


 SAM GRIFFITH 

 Justice


Opinion delivered May 30, 2003.

Panel consisted of Worthen, C.J., and Griffith, J.









(PUBLISH)
1. In their motions for summary judgment, Appellees cited Rule 166a(c) as their summary judgment
standard. At no time was Rule 166a(i) mentioned or alluded to.
2. We note that Appellees attached hundreds of pages of medical records and other documents to their
motions for summary judgment. However, the only reference they made in their appellate brief to specific evidence
was to the following quote, purportedly in "Exhibit 3:" "all matter of medical, dental, and psychiatric judgment are
the sole province of the unit physician . . .." Unfortunately, Exhibit 3 was not attached to the brief. To sum it up,
what was attached was not referenced, and what was referenced was not attached.